VANDERCOOK v. BAKER ET AL.

1. **Mortgage:** TRANSFER OF: PROMISSORY NOTE. The transfer of a promissory note carries with it the mortgage executed to secure it, and the mortgagee, after the transfer of the note, has no such control over the security that he can discharge or impair it to the prejudice of the transferee.

2. ———: RECORDING OF: EVIDENCE. Where a party testified that at the time of filing a mortgage for record no other incumbrance upon the property appeared of record, while the recorder testified that the entry of another mortgage, prior in date and appearing to be of prior record, had previously been made, and under his supervision, *held*, that the presumption in favor of the record would prevail.

3. ———: PROMISSORY NOTE: FRAUD. The assignee of the promissory note is not chargeable with the fraud of the mortgagee in procuring the registry of a mortgage executed to secure it.

4. ———: PRIORITY. A mortgage containing covenants of warranty does not take priority over one of earlier registration which contains no such covenants.

*Appeal from O'Brien Circuit Court.*

THURSDAY, APRIL 18.

ACTION in chancery to foreclose a mortgage upon real estate by a transferee thereof. The petition shows that by an instrument duly recorded, it is claimed the mortgage was satisfied and the lien thereof discharged, but alleges that it has no such effect, for the reason that the plaintiff acquired the mortgage by a transfer from the mortgagee before the attempt to discharge the lien of the mortgage. Frederick Wells is made a defendant, and it is alleged that he holds a mortgage which is a lien inferior to plaintiff's mortgage. Wells, by a cross-petition, claims his mortgage to be the first lien and asks that it be foreclosed. The mortgagors made default. The cause was submitted to the court upon written evidence, under an order made at the appearance term, and a decree

was rendered foreclosing both mortgages and declaring Wells' mortgage to be the prior lien.

Plaintiff appeals.

*Eugene Cowles* and *Joy & Wright*, for appellant.

*Chase & Taylor* and *E. B. Soper*, for appellee.

BECK, J.—I. The contest in this case is between two mortgagees, to determine which one of them holds the paramount lien, and is to be settled mainly upon the testimony relating to one or two points of the case. The questions of law involved in the case, we think, will present no great difficulty in their solution.

Baker and wife executed to Inman a mortgage to secure certain promissory notes. The records of the county show that the mortgage was filed on the 3d day of November, 1874. On the 17th of the same month Inman gave the notes to plaintiff as collateral security upon an indebtedness held by plaintiff against him, and, on the same day, confessed a judgment thereon. Subsequently, and after this suit was commenced, plaintiff caused the notes to be sold upon an execution issued on the judgment, and became purchaser thereof.

On the 9th day of November, 1874, Wells took a mortgage from Baker and wife upon the same land described in plaintiff's mortgage, to secure money loaned to Inman. Prior to the loan Inman exhibited an abstract to Wells' agent upon which the mortgage securing the notes transferred by him to plaintiff did not appear. He undertook to give a first mortgage security for the money borrowed, and represented the land to be free of incumbrances, except such as were to be discharged by the money borrowed of Wells. Of the fraud of Inman in this transaction, there exists no question. It is not shown that plaintiff had notice thereof, and it appears that when he received the notes as collateral security he had

Vandercook v. Baker.

no other notice of the transaction than was derived from the record of the mortgage to Wells.

On the 25th day of December, 1874, Inman, upon the application of an agent of Wells, executed a release of the mortgage securing the notes transferred to plaintiff. This was done without the authority, assent or knowledge of plaintiff.

II. Plaintiff insists that the satisfaction of the mortgage by Inman was void. This branch of the case first demands our attention.

The transfer of a promissory note carries with it a mortgage executed for its security. The mortgagee, after transfer of 1. MORTGAGE: the note, has no such control over the security transfer of: promissory that he can discharge or impair it to the prejudice note. of the transferee. These are familiar rules. The satisfaction of the mortgage being without authority or assent of Wells was, as to him, void.

III. But Wells insists that the testimony establishes the fact to be that plaintiff had not received the note as transferee at the time the discharge of the mortgage was entered. His agent, who procured from Inman the discharge, testifies with some degree of positiveness, that, at the time, the notes were exhibited to him by Inman. He did not read them, nor have them in his hands, but he thinks the notes were shown to him. On the other hand, plaintiff testifies that he received the note in December before the release was executed. Another witness, with more explicitness and equal positiveness, testifies to the same facts. The preponderance of the testimony very satisfactorily establishes the truth to be, that plaintiff had received the notes before Inman discharged the mortgage.

IV. Wells insists that the proper index of the mortgage book did not, at the time his mortgage was filed, exhibit the 2. ——: record- mortgage under which plaintiff claims. He sup- ing of: evi- dence. ports this position by the testimony of another agent, (one who examined the records and took the mortgage,) who testifies, with confidence and positiveness, that the index

did not, at the time Wells' mortgage was filed, contain an entry
of plaintiff's mortgage.  He is not corroborated by other wit-
nesses or by established facts.  The position of plaintiff, on this
point, rests upon his unsupported testimony.  In opposition to
this witness we have the record itself, and the testimony of the
recorder.  While it cannot be denied that the record may be
impeached by oral testimony, and that the testimony of one
witness only would authorize us, in the absence of conflicting
proof, to hold the index to be false and fraudulent, yet, it is
true, that in such a case we must act with great caution and
only upon clear and satisfactory evidence.  The solemnity of
the record, and the danger to the rights of property which
would result from setting it aside, demand that clear and
satisfactory proof be required to impeach it.  The recorder
testifies in this case that the entry of the .mortgage in the
index was made in his presence and under his supervision.
He is unable to state, upon his independent memory, that it
was made on the day the mortgage was filed.  He states that
his habit was to index all instruments upon receiving them,
and that his belief is the index entry of the mortgage was
made on the day the record imports.  There is no ground
for doubting the intelligence and honesty of this witness.  It
is not to be denied that if the entry was made after Wells'
mortgage was filed, six days subsequent to the filing of plain-
tiff's mortgage, the fact was not known, or was forgotten
by the recorder.  This is incredible.  The business of his
office does not appear to have been large.  He certified to an
abstract about one month after Wells' mortgage was filed,
showing it to be the second lien; a few days thereafter the re-
lease of plaintiff's mortgage was filed, and there seems to have
been controversy from thenceforward in regard to the priority
of the liens.  The transaction, if the index is false, would not
have escaped the attention of a man of ordinary intelligence
and watchfulness; such a man we must presume the record-
er to be, and the testimony exhibits nothing to rebut such
presumption.  If he knew at the time the index entry was

made that it was false, it could not have escaped his memory, if ordinarily retentive. There is nothing to warrant the conclusion that his memory is not as good as that of other men. Now here is a public officer charged with the duty of making a record entry, who testifies that it was made in the usual course of the business of his office, which required it to be made on the day the record purports to have been entered; that he was personally present when it was made; that he has no knowledge of any error in the index, and believes it to be correct and to have been made upon the day shown therein. There is no suspicion resting upon his honesty, and no ground to doubt his intelligence or the accuracy of his memory. His testimony, negative though it be in character, gives such support to the record that it cannot be overthrown by the uncorroborated statement of one witness.

V. The notes were first delivered to plaintiff as collateral security. He finally claims, in an amended petition, the absolute title to the notes acquired under a sheriff's sale. Wells now insists that the title was not passed by the sale. Let this be admitted. What, we must then inquire, is the interest which plaintiff holds in the notes? He has possession of the notes which were received as collateral security. If the sale is void, he is not, in the absence of fraud on his part, and of complaint on the part of the makers of the notes, to be regarded as having no interest in them, but will be presumed to hold them under the original agreement as collateral security. This conclusion disposes of this point of the case.

VI. It is said that as the notes were negotiable and delivered to plaintiff without indorsement, he holds them as assignee, subject to all equities between the original parties. Let this be admitted. It does not appear that the makers of the notes hold any equities against the payee. It is not shown that they were given without consideration, or that any defense exists against their enforcement, if, indeed, it exists in this case, where the makers urge no defense.

3. ——: promissory note: fraud.

The equities of which the assignee is presumed to have

notice are those between the parties, which may be in the nature of defenses to the enforcement of the notes. The equities which Wells urges in this case are not against the validity of the notes. It is an equity against the maker in favor of a stranger to the notes, and does not involve the notes themselves, but the lien of a security therefor. That lien subsists, not through the note, but through the record of the mortgage.

The notice upon which Wells relies arises under rules peculiarly applicable to the transfer of contracts. The notice which will determine the priority of a mortgage arises under the statute applicable to the registry of instruments affecting real estate. Now it cannot be that fraud of a mortgagee, in procuring the registry of a mortgage, will affect the right of the holder of a promissory note to enforce it. The rules of the law will not imply that the assignee has notice of matters other than those between the parties. *Crosby v. Tanner*, 40 Iowa, 136. The holder of the note may enforce it. If this be so, he may enforce the mortgage, for it accompanies the debt and exists while the debt exists. If the plaintiff may recover on the note he may also enforce the mortgage.

What notice does the record of the mortgage impart? That it was filed on a certain day. From that day, if sufficient in other respects, it becomes a lien. The record imparts no notice as to the circumstances under which the mortgage was executed and delivered.

The plaintiff, as assignee, must take notice of equities affecting the validity of the note existing between the original parties; but he is not presumed to have notice of the equities of third persons against the security of the note.

We conclude that plaintiff is not chargeable with the fraud of Inman in putting the mortgage under which plaintiff claims upon the record, so that it became a prior lien to Wells' mortgage. This is the fraud which Wells claims defeats plaintiff's mortgage.

VII. It is insisted that the notes were passed to plaintiff

Vandercook v. Baker.

without consideration.   We do not so understand the case.
Inman, the record shows, did owe plaintiff, and, as we have
seen, plaintiff, if he does not own the notes absolutely, holds
them as collateral security upon his claims against Inman.

VIII.   Wells insists that the transfer of the notes conveyed
to plaintiff the equitable title only ; that he held it by an *equitable assignment*, which would not convey with it the mortgage.
The plaintiff holds as an assignee by delivery.   It cannot be
said that he holds under an equitable assignment.   The
assignment is sufficient in law to transfer the note, subject,
however, to the equities of the other party.

IX.   Wells insists that, as fraud has been shown on the
part of Inman, plaintiff must show that he took the note without notice of the fraud and for value.   This rule would be
applicable if the fraud complained of was in the note.   It is
in putting the mortgage upon record so that it became the first
lien, and does not pertain to the note.   The burden is upon
Wells to show plaintiff's knowledge of the fraud, not upon
plaintiff to show that he had no notice thereof.

X.   It appears that Wells' mortagage contains covenants of
warranty, while the other mortgage does not.   It is insisted
that plaintiff, therefore, had notice that Wells' mortgage was to
be regarded as a prior lien by the parties.   We discover no reason to support this conclusion.   The
priority of the mortgages is to be determined by their registration, not by their form or provisions.   We have never heard
that covenants in a mortgage would impart notice that it should
be treated as a lien prior to other instruments filed before it.

XI.   Objections to plaintiff's right to enforce his mortgage,
founded upon the form of the acknowledgment, and the fact
that the date of Wells' mortgage was prior to the day plaintiff's
was recorded, are urged upon our attention.   It is sufficient
to say that the acknowledgment is sufficient, and that if plaintiff had notice that Wells' mortgage was executed before his
own, the record informed him that it was subsequently filed for
record, which determined that it was a junior lien.

We have considered all questions raised in this case, and conclude that plaintiff's mortgage is the prior lien and should be so enforced. The decision of the Circuit Court is reversed, and the cause will be remanded for a decree in harmony with this opinion.

REVERSED.