R. W. WOOD, Appellee, v. WILLIAM K. SWAN et al., Appellants.

NOVEMBER 13, 1928.

*Thomas J. Bray,* for appellants.

*Cross & Hamill,* for appellee.

.DE GRAFF, J.—The conflict of interest in this case is between assignees of mortgages involving in part the same real estate. The facts disclose that, on February 14, 1924, William and Zoe Swan (appellants), husband and wife, executed and delivered to Harry B. Allfree the note in suit of $3,500, and secured same by a mortgage on 34½ acres of land in Poweshiek County, Iowa. The mortgage was filed for record on March 7, 1924. On March 24, 1924, Allfree assigned this mortgage to the plaintiff Wood, and delivered to Wood the note, mortgage, assignment, and abstract of title. The assignment was filed for record by Wood on July 10, 1925.

It further appears that, a short time after this mortgage was executed, the appellant Swan purchased an additional 100 acres of land from one Meredith, and assumed as part of the purchase price a then existing mortgage of $3,700 on said land. Subsequently, he desired to refinance his affairs, and on November 22, 1924, Swan and his wife executed and delivered to Allfree two mortgages covering the 134½ acres,—one mortgage in the principal sum of $9,000, the other of $2,000. There can be no question, under the record, that, at the time the defendant Swan executed and delivered to Allfree these subsequent mort-

gages, it. was intended that Allfree should negotiate them, and with the proceeds pay off the $3,700 mortgage on the Meredith 100 acres, and also cancel the $3,500 mortgage in suit, which mortgage Swan believed was still held by Allfree. No trouble arose with the Meredith mortgage, since Allfree did pay it. It further appears that, on January 2, 1925, the two mortgages ($9,000 and $2,000) were assigned by Allfree to the Scott County Savings Bank (appellant), and filed for record on March 18, 1925.

Wood in this action seeks to foreclose his $3,500 mortgage, and asks that it be declared senior to the two mortgages held by the Scott County Savings Bank of Davenport. The Swans in their answer denied that there is any amount due on plaintiff's mortgage, pleaded payment of said mortgage, and further allege that Allfree was acting as the agent of appellee Wood in loaning money and collecting principal and interest thus loaned, resulting in the estoppel of plaintiff to claim or assert that Allfree was not his agent for the purpose of collecting the instant note and mortgage. Swan also filed a cross-petition, asking that title to the 34½ acres of land be quieted, and that Wood be estopped from having or claiming any lien on said real estate. The defendant Scott County Savings Bank in its answer denied that the lien of plaintiff's mortgage was prior and superior to the lien of the two mortgages subsequently executed and now owned by the bank, predicating its claim of priority on the fact that the written assignment of the mortgage from Allfree to Wood was not of record when the bank filed for record its assignment of the two subsequent mortgages.

It is quite obvious from the record that Allfree was the trusted agent of Swan, and, in fact, in refinancing Swan's operations, a commission of $110 was paid Allfree for negotiating the loan. The result of this case does work an extreme hardship on Swan, who apparently placed implicit confidence in Allfree. The question is, however, what equitable reason may be given for denying to the appellee Wood his right to recover in this foreclosure action.

Allfree was the payee in all of the notes, and the mortgagee in all of the mortgages executed by Swan. It is apparent that Allfree had the prima-facie right to negotiate the paper. The plaintiff's mortgage did appear of record as the first mortgage

lien on the premises at the time the defendant Scott County Savings Bank received the assignments of the two subsequent mortgages. The defendant-bank, therefore, is not in a position to complain by reason of the fact that the assignee of a prior mortgage failed to record his assignment. The Scott County Savings Bank in fact took the assignment of the two mortgages from Allfree without actual knowledge of the existence of the first mortgage, and without any reliance upon Allfree's apparent ownership and apparent payment to or settlement with him. The first mortgage was on record, however, at all times material to this issue, and the Scott County Savings Bank must be bound with constructive notice of that record fact. See *James v. Newman*, 147 Iowa 574.

... May it be said, as contended by the appellant Swan, that Allfree was the agent of the appellee Wood? The fact that the note in suit was made out on one of Allfree's forms, and payable at Allfree's office, did not *per se* make Allfree the agent of an assignee, to receive payment of the note. *Huismann v. Althoff*, 202 Iowa 70.

Allfree never loaned any money to or for the appellee Wood, although, during a prior period of five or six years, Wood had purchased from Allfree six mortgages on different pieces of real estate. It is true that the first interest coupon, due March 1, 1925, on the instant note, was paid to Wood at Allfree's office. Wood took this coupon to that office for the reason, as recited in the note, that it was payable there. He did not leave the coupon or note at Allfree's office for collection, but simply presented the coupon there for payment. When the interest coupon matured on March 1, 1926, Wood wrote Swan, by registered mail, calling his attention to the fact that the interest had not been paid. It was at this time apparently that Swan learned of Wood's ownership of the mortgage. Swan went to Allfree's office, to find out the true situation, and at this time Allfree promised Swan that the matter would be taken care of in a few days. Swan also took up the matter with Wood, who then learned of Swan's refinancing operation in November, 1924.

Wood desired to have Allfree brought to the former's office. In this he did not succeed, but an employee of Allfree's did enter his appearance, and the promise was made on behalf of Allfree that the interest would be paid that day, and the principal a few

days later. Subsequently, the 1926 interest coupon was presented at Allfree's office for payment, and it was paid. Shortly thereafter, Wood advised Swan that the principal on the mortgage had not been paid, and expressed a desire to see Swan. Swan went to Allfree's office, and, according to Swan's testimony, Allfree informed Swan that he (Allfree) had taken the money on this loan to Wood, but that the latter had made him take up another loan. According to the testimony of Wood, he (Wood) went to Allfree's office, and took with him another mortgage that was owned by Wood. Wood testified:

"He [Allfree] would see what could be done about settling the Swan mortgage, after I had seen him two or three times in regard to it. I went in there, and I also took with me another mortgage that I held, and he said: 'What is that you have got there?' I told him [Carter loan], and he said: 'That is the one I want to pay off, and I will pay off the Swan mortgage next week.' He never tendered me the amount due on the Swan mortgage. His intentions might have been [to do so] that day I went in there, but he switched, or re-applied the funds,—I don't know."

It is apparent that Wood was using his good offices to help Swan out of his difficulty, and was attempting to have Allfree pay the Swan note and mortgage. We can go no further in construing the evidence in this particular. There is no claim that appellee Wood held out Allfree as his agent, or that Allfree was assuming to act as the agent for Wood. There is no basis to predicate a common agency, under the facts in this case. The appellants Swan would have paid or settled with Allfree at their peril, without demanding profert of the note and mortgage in suit. *Security Co. v. Graybeal,* 85 Iowa 543; *Baumgartner v. Peterson,* 93 Iowa 572; *Ritter v. Plumb,* 203 Iowa 1001. The case of *Shoemaker v. Ragland,* 202 Iowa 947, is distinguishable from the case at bar on the fact side. There is no contention that Swan paid Allfree the amount of the mortgage in suit in money. It is a well recognized principle that one who pays the amount due on negotiable paper to another who does not have the paper in his possession, does so at his peril. The trouble is, Swan left everything to his agent, Allfree, who betrayed his trust, with the consequent loss to Swan. In brief, there is no

evidence which discloses that Allfree was the agent of the appellee Wood, either by express authority, implication, or ratification.

The equities of this cause were correctly determined by the trial court, and the decree entered is—*Affirmed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.