IDA B. KUHN, Appellee, v. HERMAN H. LARSON et al., Appellees; J. H. FEDLER and GOLDIE INGALLS, Appellants.

No. 42840.

APRIL 2, 1935.

REHEARING DENIED SEPTEMBER 27, 1935.

Albert McGinn and Robertson & Robertson, for appellant J. H. Fedler.

J. A. Williams, for appellant Goldie Ingalls.

Baird & Baird, for appellee Ida B. Kuhn.

PARSONS, J.—This case arose over the foreclosure of a mortgage in Council Bluffs, Iowa. It appears from the facts in the case set out in the abstract, in the statements of counsel, that one A. F. Smith, a resident of that city, apparently posing as a highly conscientious, deeply religious individual, carried on a business in that city; that the business was conducted sometimes under the name of A. F. Smith, the individual, and sometimes as A. F. Smith Company, a corporation; that Herman H. Larson and Minnie Larson were the owners of lots 33 and 34 in block 5 of Squire's addition to the city of Council Bluffs, Iowa; that on or about October 8, 1924, the Larsons gave a note payable to

A. F. Smith Company at its office in Council Bluffs, Iowa, and in the sum of $1,600; that to secure this note, at the same time the said Larsons gave to A. F. Smith Company a mortgage on the property above described and involved herein, which said mortgage was filed for record and recorded in the office of the recorder of Pottawattamie county, Iowa, on the 29th day of October, 1924.

That subsequently the said A. F. Smith Company sold the said note and mortgage to the plaintiff herein, Ida B. Kuhn, on or about the first day of November, 1924, and on said date executed and delivered to the plaintiff an assignment of said mortgage, which assignment was recorded on the 9th day of December, 1930; but before the assignment thereof had been recorded, and on or about the 14th day of November, 1925, the Larsons executed and delivered to A. F. Smith a mortgage upon the property covered by the $1,600 mortgage, to secure the payment of a coupon bond or note given to A. F. Smith in the sum of $2,600, which said mortgage was recorded on the 18th day of November, 1925, and on the date of the recording thereof A. F. Smith assigned and delivered to the defendant J. H. Fedler, by written assignment, the latter mortgage, which assignment was recorded on the 20th day of September, 1930. So that at the time Fedler purchased the mortgage or received an assignment thereof, the records in the recorder's office showed that the property in question was subject to the $1,600 mortgage, showed no satisfaction, and showed no assignment.

Subsequently, and on the 6th day of October, 1927, the Larsons sold the property by written contract of sale to Goldie Ingalls, said contract reciting that there was a $2,600 mortgage on the property, the purchase price being $4,500, and acknowledging receipt of $1,000 in payment thereon, the balance to be paid at $35 per month.

The questions arising in this case were as to the priorities as between the holder of the $1,600 mortgage, the plaintiff herein, and the holder of the $2,600 mortgage, J. H. Fedler, and Goldie Ingalls. The court in its decree held that the $1,600 mortgage owned by the plaintiff was the paramount lien and ordered it foreclosed, and established it as a first lien for $1,922 at 8 per cent per annum from the first day of May, 1933, and that the interest of Fedler on his $2,600 mortgage and also the interest of Goldie Ingalls were junior thereto. Of the defendants who made

no defense, H. G. McGee and Margaret L. McGee and the Larsons, they were adjudged to be inferior in their rights in the premises.

A. F. Smith was not a witness in the proceeding, he being somewhere expiating various offenses against the United States government at quite a lengthy forced absence from the scene of his former activities. Such are the facts on which this case is to be decided.

It is one of the contentions of Fedler and Goldie Ingalls that the plaintiff was negligent in not recording her assignment of the $1,600 mortgage, and that not to do so, notwithstanding the mortgage was on record prior to any of the rights claimed by the others having arisen, the plaintiff is not protected by reason of the fact that the mortgage was of record and that the assignment of the mortgage was an instrument affecting the real estate within the meaning of the recording laws. The record set out shows that the $1,600 mortgage had been given and was outstanding, and was given to A. F. Smith Company. The dealings of the defendants, so far as they affect this case, were all with A. F. Smith, the individual, a separate legal entity from the corporation of A. F. Smith Company. Of course, the plaintiff took the risk of being defrauded by Smith by leaving her assignment unrecorded. Had there been filed for record a satisfaction by A. F. Smith Company of the $1,600 mortgage prior to the recording of the assignment of plaintiff and prior to the attaching of any of the equities of the contesting defendants herein, it would raise a different question than what we have presented here. As it appears to us, under the law as it stood at the time these transactions took place, where the records disclosed that there was an outstanding mortgage on real estate, a first lien on the premises, the sole question arising is: Is it necessary for the assignee of such mortgage, in order to protect himself against subsequent purchasers or encumbrances, to have his assignment of record? In other words, is not it true that the mortgage appearing in the chain of title is a lien on the premises and notice to the world of the rights of the holder of such mortgage, wherever he may be, and a notice to persons contemplating any dealing with the property, that they must at their peril ascertain the status of the prior mortgage?

The latest pronouncement of this court upon the question involved is in Wood v. Swan, 206 Iowa 1198, 221 N. W. 791.

The conflict in that case was between assignees and mortgagees involving some real estate. It appears therein that on February 14, 1924, William and Zoe Swan, husband and wife, executed and delivered to one Harry B. Allfree a note in the sum of $3,500 secured by a mortgage on 34½ acres of land in Poweshiek county, Iowa, which was filed for record March 2, 1924, and on March 24, 1924, Allfree assigned the mortgage to plaintiff Wood and delivered to him the note, mortgage, assignment, and abstract of title. Wood filed his assignment on July 10, 1925.

A short time after this mortgage was executed, Swan purchased an additional 100 acres of land from one Meredith, and assumed as a part of the purchase price a then existing mortgage of $3,700 on said land, and on November 22, 1924, Swan and wife executed and delivered to Allfree two mortgages covering the 134½ acres—one mortgage for $9,000 and the other for $2,000. It was intended that Allfree should negotiate them, and with the proceeds pay off the $3,700 mortgage, and also cancel the $3,500 mortgage, which mortgage Swan believed was still held by Allfree. On January 25, 1925, Allfree assigned his mortgages to the Scott County Savings Bank and the assignment was filed for record March 18, 1925. This it will be noted was a year subsequent to that of the assignment to Wood. Wood brought action to foreclose his mortgage. The Scott County Savings Bank set up that he would be estopped from having any lien on the 134½ acres, and the defendant denied that the lien of Wood's mortgage was prior and superior to the lien of the two mortgages subsequently executed, predicating its claim of priority on the fact that the written assignment of the mortgage from Allfree to Wood was not of record when the bank filed for record its assignment of the two subsequent mortgages. Allfree was the payee in all of the notes, executed by Swan. This decision was concurred in by a majority of the court, with no dissents therefrom, and it seems to us that the propositions laid down therein are controlling in this case.

In this case the mortgage was to A. F. Smith Company, a corporation. The defendant and appellant Fedler had no dealing with A. F. Smith Company. His sole dealings were with Smith. Beside, at the time of the dealings of Fedler with Smith, Smith gave him the abstract of title, which showed that the mortgage was on record and ran to A. F. Smith Company.

True, of course, under the authorities, the plaintiff risked

her lien in not placing her assignment of record, for by placing it of record she would have shown that she owned the mortgage and a satisfaction would have been necessary from her, but Fedler had notice of the existence of the mortgage. He had both actual and constructive notice—actual by having the abstract, and constructive notice by the fact that the mortgage was of record in the name of the corporation as mortgagee. The mortgage that Fedler bought was one made to A. F. Smith individually. So in order to hold for the appellant herein, it would be necessary for us to overrule the Wood case. There is nothing in the record showing, as in some of the cases, that Smith had any authority whatever to represent the plaintiff. He was in no wise her agent, hence any representations he might individually make to Fedler would not be binding upon her. Smith probably lied to Fedler, but Fedler had the right, and it was his duty before he bought, if he wanted to protect himself, to see that the mortgage to A. F. Smith Company was satisfied. A review of the authorities is unnecessary in view of the last holding of the court. None of the cases hold under such facts as there are in this case that the plaintiff as holder of the $1,600 mortgage would not be protected and that Fedler's would be superior to hers. We have examined carefully the previous cases cited by the appellant and find nothing in any of them which in any way inclines us to disturb the decision of the court in Wood v. Swan. In that opinion the court says on page 1202:

"There is no claim that appellee Wood held out Allfree as his agent, or that Allfree was assuming to act as the agent for Wood. There is no basis to predicate a common agency under the facts in this case. The appellants Swan would have paid or settled with Allfree at their peril without demanding profert of the note and mortgage in suit. * * * There is no contention that Swan paid Allfree the amount of the mortgage in suit in money. It is a well-recognized principle that one who pays the amount due on negotiable paper to another, who does not have the paper in his possession, does so at his peril. The trouble is Swan left everything to his agent Allfree who betrayed his trust, with the consequent loss to Swan."

So in the case at bar, Fedler dealt with Smith only, and not with the corporation. He saw fit not to rely on the record of the

mortgage, the same not being satisfied. Wherefore, by his own lack of common business sagacity he lost money.

There is no pretense that Goldie Ingalls even approached being in as good a position as Fedler. She bought of the Larsons, who were the owners of the property, and an inspection of the records would have shown the existence of the $1,600 mortgage. She did not inspect, and, as lamentable as it may be, she cannot now recoup her loss by taking it out of either the plaintiff or Fedler, her codefendant.

The appellants herein raised some questions about the pleadings, but we feel that under the undisputed facts in this case the district court in deciding it did right; that both Fedler and Goldie Ingalls, by failing to take ordinary business precaution to look over the records of the county to see whether the $1,600 mortgage was satisfied before Fedler bought the $2,600 mortgage, or before Goldie Ingalls bought the premises, cannot be protected, and for these reasons the decision of the lower court is affirmed.

ANDERSON, C. J., and DONEGAN, HAMILTON, ALBERT, and KINTZINGER, JJ., concur.